Weldon, J.,
delivered the opinion of the court:
The petition of claimants alleges that they are citizens and residents of the State of Ohio; that since the 8th day of May, 1871, they have been owners in fee simple of certain lands in said State, amounting to 580.60 acres, abutting upon the Mus-kingum River, in said State; that in 1840 the State of Ohio completed the erection of a system of dams and locks on said river, and that the State held the control and proprietorship of said system of locks and dams, known as the “Muskingum River improvement,” continuously until the 31st day of January, 1878; that about said time the dams and locks, all and singular, were ceded, conveyed, and transferred by the State ■ of Ohio to the defendants, the United States; that the United States accepted such cession and conveyance, and since then have possessed, occupied, and maintained said improvement, with all the fixtures, appliance^, and appurtenances; and that since that time the defendants have been in the exclusive use and possession of the same, and have held the same for public use in the navigation of said river. (24 Stat. L., 324.)
It is further alleged that, in the improvement of said river by the State of Ohio, there were constructed a certain dam and lock, kuown as No. 8, at Eagleport, a point on said river about 5 miles below the lands of claimants, by means of which the flow of water in the river was obstructed so as to form a “level,” extending from Eaglejmrt dam to a like dam then also constructed and since maintained at Taylorville, on said river, a point about 10 miles above Eagleport dam and about 4 miles above the lands of the claimants; that the Eagleport dam was so constructed until the time of the cession and transfer of the “improvement” to the United States as aforesaid, and until some time in 1891 was maintained at such an elevation as not to cause appreciable overflow of the claimants’ land, nor to *254 seriously interfere witli or obstruct or impair its use and occupation.
It is further averred—
“That the claimants and their grantors, from a period long-prior to the improvement of said river by said State, as aforesaid, to and until the time of said cession and transfer to the United States, as aforesaid, and to and until some time in the year 1891, have successively and continuously held, occupied, and used the said premises without any injury to, or appropriation of the same, or any part thereof, arising from such improvement, or the maintenance thereof, and especially from any injury, loss, damage, or appropriation arising from the construction or maintenance of said Eagleport dam and lock, as aforesaid.
* ***** *
“That after the cession and transfer of said ‘improvement’ to the United States as aforesaid, to wit, in the year 1891, the said defendant, the United States, in the exercise of its rights and powers in and over said ‘improvement,’ and in pursuance of its lawful control of the navigation of said river, and for the betterment and improvement thereof, by its duly authorized officers and agents, made such alterations and changes in, and such additions to, and so increased the elevation of said Eagle-port dam, that the claimants’ lands above described were and are perpetually taken and apxn-opriated by the defendant for public use, to wit, for'the construction, betterment, and maintenance perpetually of the said ‘Muskingum Biver improvement,’ in this, to wit: That the United States then and there built upon and attached to said dam an additional structure of timber and stone, forming a part of said dam, and thereby increased the elevation of said dam 4J feet, or thereabout, over and above the elevation at which the same had been previously erected and maintained; and that, in consequence of such addition to and elevation of said dam, the level of the water in said river above said dam was and is so increased in height as to overflow the said lands of the claimants, and to cause the water of said river to flow back upon the claimants’ premises, and to stand thereon, and to deposit upon said premises earth, gravel, sand, and drift, thereby permanently flooding and rendering wholly useless a large portion, to wit, 60 acres, or thereabout, of said lands, and frequently overflowing, flooding, and depositing earth, gravel, sand, and drift upon other and adjoining parts of said land, to wit, CO acres thereof, or thereabout, injuring and destroying the claimants’ crops, fences, and improvements thereon; and also thereby seriously impeding and interrupting and interfering with the use and enjoyment by the claimants of all that part of their said lands and premises not so flooded or overflown, and greatly depreciating the value thereof.
*255 “That tbe said dam and lock at Eagleport are permanent structures, intended for and adapted to tlie permanent improvement and navigation of said river,- the said dam being about 320 feet in length, and being built of heavy timber and stone, firmly embedded upon the bottom of said river, and having a total elevation of 12 feet, or thereabout; and the said lock being constructed of heavy and permanent masonry, with gates and other apparatus adapted to, and used for, the passage of vessels through the same.
“And that claimants, by the elevation, erection, and maintenance of said dam by the United States as aforesaid, have been, are, and will be perpetually subjected to great loss, damage, and injury, in the impairment, hindrance, and deprivation of their use, occupation, and enjoyment óf their said premises, and in a great decrease in the value thereof, by reason of the said addition to, and improvement of, said dam by the United States as aforesaid. And that the amount of depreciation, loss, damage, and injury sustained by the claimants, by reason of the appropriation of their said property, and the acts and things so done by the defendant as aforesaid, amounts, as the said claimants verily believe, to the sum of $15,000, and for which they have received no compensation whatever.
To the petition, the defendants have filed the following motion:
“ Comes the Attorney-General, and moves the court to strike the petition of claimants from the files and dismiss this cause:
“First. Because the petition does not clearly and definitely state the character and extent of the damage done to claimant by defendants’ action.
“Second. Because the petition does not show that the action of defendant, by which claimants allege they were damaged, was done in pursuance of any contract, express or implied, between petitioners and defendant, but does show that it was a tort of which this court has no jurisdiction.
“Third. Because the petition does not state any cause of action in claimants of which this court has jurisdiction.”
Treating the motion as involving the substance of a demurrer, we are called upon to pass on the sufficiency of the aver-ments of the petition.
The statute of 1887, entitled “An act to provide for bringing suits against the Government of the United States (1 Supp. Rev. Stat., 2d ed., 559), provides—
“That the Court of Claims shall have jurisdiction to hear and determine the following matters:
“ First. All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon *256 any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable.”
The substantial objection made by the defendants is, that the action “ sounds in tort,” and is thereby excluded from the jurisdiction of the court by the express terms of the statute.
In order to determine that question it becomes necessary to ascertain the exact character of the grievance complained of upon the part of the claimants, as disclosed by the allegations of the petition.
As the technical rules of pleading are not enforced in this court, we will consider the merits of the petition upon the objection “because the petition does not state any cause of action in claimants of which this court has jurisdiction.” (Pierce, 1 C. Cls. R., 195; Burns, 7 id., 220; Hobbs, 19 id., 324; Brown, 17 id., 303; Little, 19 id., 323.)
The substance of the petition is, that the claimants were at tlie time of the alleged grievance the owners in fee of a tract of land in the State of Ohio abutting on the Muskingum River, a navigable stream; that the State adopted an improvement of the same known as the “ Muskingum River improvement; that in such improvement it erected dams and locks; that said improvement -was conveyed and transferred to the United States; that the United States accepted such cession and transfer on the 31st of January, 1887; and that they became the sole owners of said improvement, and control the same perpetually for public use in the navigation of said river.
It is further alleged, that tbe State of Ohio built in said river a dam below the land of the claimants and one above, by means of which the flow of water was obstructed so as to form a “ level;” that as said dams were constructed by the State no appreciable flow of water was made upon the land of claimants, but that in the year 1891 the defendants, through their duly authorized agents, made alterations and changes in the dam below the land of claimants, and so increased its elevation that the claimants’ land above was and is perpetually taken and appropriated by the defendants for public use, to wit, for the betterment of the said Muskingum improvement; *257 that in consequence of the elevation of said dam and the incident flow of water the land of claimants is permanently flooded to the extent of 60 acres, rendering it wholly useless, and thereby interfering with the claimants in the use and occupation of the land.
It is also alleged that said improvement in its condition is permanent; that the claimants will be perpetually subjected to a great loss in the inability to use and occupy their said land; and that by the reason of the permanent appropriation of their property by the United States they are damaged to the extent of $15,000.
It is insisted by counsel for claimants that the petition in substance charges an appropriation of private property by the defendants; and that such appropriation, being in accordance with law and a right on the part of the Government, does not sound in tort within the meaning of the statute defining the jurisdiction of this court.
The right of eminent domain is not inherent in the Government because of any provision of constitutional recognition, but it is an essential element in the essence of sovereignty, and the only recognition of it in the American Constitution is the limitation upon its exercise as provided by the fifth amendment.
The duty of the Government to pay for private property taken for public use, as is said by the Supreme Court, “ forms no part of the power,” and it may therefore delegate the power to fix the compensation “ to a tribunal created under the laws of the State or may create a special tribunal for that purpose.” (United States v. Jones, 109 U. S., 513; Boom v. Patterson. 98 id., 406; Kohl v. United States, 91 id., 367.)
The right of eminent domain is a part of the law of self-preservation ; it is not invalidated by the omission from constitutions or codes, nor increased in the scope of its power by the enactments of legislatures. The mode of its exercise .may be regulated, but its integrity is not to be impaired.
The right, as recognized by the fifth amendment to the Constitution of the United States, when exercised by the Government is in strict accordance with a legal and constitutional exercise of power on the part of the Government, and does not involve the commission of a tort, but is in subordination to law and in pursuance of legal right.
*258 The right of eminent domain being’ recognized by ther supreme law of the land, it would involve a contradiction to hold that in the exercise of that right there can exist the legal elements of a wrong.
In the civil economy of political society whatever is legal is right; the power of eminent domain is legal, and is therefore right; being .right in legal contemplation it excludes from the transaction to which it is properly applied all wrong, and therefore all tort.
The taking of private property without the consent of the owner on the part of an individual is a wrong per se; but not necessarily so upon the part of the Government, as it has the constitutional right to take private property against the will of the owner, subject to the condition of paying for it. Individuals hold their property subject to the wants and necessities of the public, and if in the exercise of the right of eminent domain the public appropriate such irroperty, a compensation in value is the only redress due the owner. {Pope, 26 C. Cls. B., 12.)
The land which it is alleged was taken by the Government in the construction of its level, by the allegations of the petition, was the property of the claimants, and it does not appear that in the taking the defendants claimed any title or interest in the property, but are presumed to have recognized the fact that it was private property. The case of Langford (101 U. S., 344) is the first case decided by the Supreme Court involving the question as to the jurisdiction of this court growing out of the appropriation of real property by the officers of the United States; but in that case the defendants did not recognize the property as private, and claimed it as belonging to the United States.
The Supreme Court said:
“It is a very different matter where the .Government claims that, it is dealing with its own, and recognizes no superior to its own. In such case the Government or the officers who seize such property are guilty of a tort, if it be in fact private property. No implied contract to pay can arise any more than in the case of such a transaction between individuals. It is conceded that no contract for use and occupation would in that case be implied.”
In that case the court refrained from deciding what would *259 be tlie law of the jurisdiction of tbis court where the taking was without any claim of title upon the part of the Government, because that question did not arise upon the facts of that case. It may, however, be inferred that, if the taking had been of conceded private property, the decision of the court as to1 jurisdiction would have been different. We think that to be a fair inference from the opinion of the court.
Following the indications of the Langford case upon a question not directly in issue in that case, the Supreme Court, in the case of The United States v. Great Falls Ice Company (112 U. S., 646), sustained the jurisdiction of this court in giving judgment against the United States for the taking of jjrivate property in the absence of any express contract to pay for the same. In that case a series of statutes passed by Congress contemplated the use of the property of the claimant, but it is not material or important to consider them, as they are merely the mode of asserting the rights of the Government incident to the higher right of eminent domain. The substance of the Great Falls decision is well stated in the syllabus, as follows:
“Where property to which the United States asserts no title is taken by their officers or agents, pursuant to an act of Congress, as private property, for the public use, the Government is under an implied obligation to make just compensation to the owner.
constitutional duty of the Government, as well as with common justice, the owner’s claim for compensation is one arising out of an implied contract within the meaning of the statute defining the jurisdiction of the Court of Claims, although there may have been no formal proceedings for the condemnation of the property to public use.
“The owner may waive any objection he might be entitled to make based upon the want of such formal proceedings, and, electing to regard the action of the Government as a taking under its sovereign light of eminent domain may demand just compensation for the property.”
The question of the jurisdiction of this court in the unauthorized use of the patent by the United States was collaterally discussed by the Supreme Court in the case of James v. Campbell (104 U. S., 356). In that case it is said:
“But the mode of obtaining compensation from the United States for the use of an invention, where such use has not been by the- consent of the patentee, has never been specifically *260 provided for by any statute. The most proper forum for such a claim is the Court of Claims, if that court has the requisite jurisdiction. As its jurisdiction does not extend to torts, there might be some difficulty, as the law now stands, in prosecuting in that court a claim for the unauthorized use of a patented invention; although where the tort is waived and the claim is placed upon the footing of an implied contract, we understand that the court has in several recent instances entertained the jurisdiction. It is true, it overruled such a claim on the original patent in this case, presented in 1867; but, according to more recent holdings, it would properly now take cognizance of the case. The question of its jurisdiction has never been presented for the consideration of this court, and it would be premature for us to determine it now.”
The question of the liability of the Government for property taken in the exercise of the right of eminent domain is incidentally referred to in case of Fawcet v. The United States (25 C. Cls. R., 1889), in which it is said:
“If private property is taken for public use, the Government, clearly recognizing at the time of the taking that it is a taking of the property of the citizen, and no claim of ownership or title is made to the property by the Government, it might be held that the mere appropriation by the Government, without the knowledge or consent of the owner, would create an implied obligation to pay, on which, in a judicial proceeding, the United States might be held liable;' in other words, when the Government, in the exercise of the right of eminent domain, appropriates or uses private property, there is an implied agreement to pay for it, on which a suit can be maintained, unless the cause of action is barred by the statute of limitations.”
As to what constitutes a taking and the consequent liability of the Government are most ably discussed by Mr. Justice Miller in what has become a leading ease upon the questions presented by this record, Pumpelly v. Green Bay Company (13 Wall., 166):
“Itis notnecessary that property should be absolutely taken, in the narrowest sense of that word, to bring the case within the protection of this constitutional provision. There may be such serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning of the Constitution.
“The backing of water so as to overflow the lands of an individual, or any other superinduced addition of water, earth, sand, or other material, or artificial structure placed on land, if done under statutes authorizing it for the public benefit, *261 is sucb a taking as by the constitutional provision demands compensation.”
The act of 1887, which was intended to define more accurately the jurisdiction of this court, has been the subject of examination in the Supreme Court in the case of United States v. Jones (131 U. S., 1). In that case it is in substance decided that the jurisdiction of this court under the act of 1887 is the same as under the acts of 1855 and 1863, with the addition that it is extended to “ damages * * * in cases not sounding in tort; ” that is to say, “ damages for breach of contract.” The jurisdiction of the court is confined to money demands. The gist of the case is that the jurisdiction of the courts of the United States by the act of 1887 is not extended to enforce against the United States the performance of duties as such. The judgment must be a recovery in money, based upon a liability of the defendants, growing out of a contract express or implied, or upon some other legal liability of the Government, where satisfaction can be made by the payment of money. It was held in the case of Harmon v. United States (43 Fed. Rep., 565), as to the act of 1887, that the manifest scope and purpose of which was “to extend the liability of the Government to be sued.”
In our view of the law of this case, the question of the waiver of tort does not arise, and the discussion of that confused branch of the law is unnecessary; when it presents itself as an element of our jurisdiction it will be the apt; time to consider it. The taking or appropriation of property, with the attendant circumstances of that taking or appropriation, as indicating the liability of the defendants in this proceeding, is the question presented for our determination. We have had many suits in this court in which the claimants have sought satisfaction for the use and appropriation of private property, both real and personal, and in those cases we have established a line of authorities based upon the broad and substantial distinction whether the Government claimed the property as its own, or in the taking recognized the property as belonging to the claimant.
If the United States by their agents or officers appropriate property, claiming title thereto, and the claim is unfounded and unjust, it is a tort or wrong upon the part of the agents or officers, and the Government is mot responsible through the *262 medium of a judicial proceeding, and satisfaction is left to another department of the G-overnment.
As Mr. Justice Miller said in the Langford case, in reply to the position of counsel, that the English maxim, “ The King-can dono wrong,” must apply to the Government of the United States, “It is not easy to see how the * # * proposition can have any place in our system of government.”
The authorities cited by counsel for the Government to maintain the theory that a tort can not be waived,so as to enable the party to sue in an action ex contractu are not applicable in this case, for the reason, as we have already said, no wrong or tort exists when the Government takes and appropriates private property conceding it to be such.
In the case of Schillenger et al. v. The United States (24 C. Cls. R., 278) this court in substance held that a contract may be implied whenever the Government, acting through a competent agent, takes private property, acknowledging, explicitly or tacitly, that it is private property, and not taken under any claim of title by the United States.
In the case of Jaelcson (27 C. Cls. B., 74) the claimant sought to maintain that in the taking of the. property the defendants were in the exercise of'the right of eminent domain5 but the, court decided against that theory of the case, and rendered a judgment for the defendants. The decision of the court is based upon the legal proposition, that because the act of the defendants did not constitute the exercise of the right of eminent domain on the part of the United States, it was radically deficient in the elements of an implied contract.
The case of Lanman (27 C. Cls. B., 260) was a suit brought to recover compensation for an infringement of the rights of claimant in a copyright, and the petition disclosed a taking upon the part of the defendants, indicating a claim of title upon their part. The allegations of the petition substantially alleged a tortious taking, and the court decided, upon a demurrer, that for-such a taking the court was without jurisdiction to adjudicate the legal rights of the plaintiff. That case is distinguished from this in the fact that the • defendants did not assume to take private property, and did' not expressly or tacitly admit the title of the claimant to the property affected by their acts. The court said: “Whenever the alleged cause of *263 action arises out of the fault of the defendants or from their negligence, as contradistinguished from their obligations, undertakings, or contracts, it may be said that the action ‘sounds in tort,’ and the courts áre prohibited from assuming jurisdiction in such cases.”
The' distinction in the liability of the Government in cases where the appropriation was based upon the claim of the United States and where it was the acknowledged taking of private property is clearly recognized in a recent decision of the Supreme Court. (Hill v. United States, 149 U. S., 593):
“A claim by a person asserting title in land under tide water for damages for the use and occupation thereof by the United States for the erection and maintainance of a lighthouse, without his consent and without compensation to him, but not showing that the United States have acknowledged any right of property in him as against them, is a case sound-, ing in tort, of which the circuit court of the United States has no jurisdiction under the act of March 3,1887, chapter 359.
“ The whole effect of the act of March 3, 1887, chapter 359, under whieh this suit was brought, was to give the circuit and district courts of the United States jurisdiction concurrently with the Court of Claims of suits to recover damages against the United States in cases not-sounding in tort. (United States v. Jones, 131 U. S., 1, 16, 18.)
“ The United States can not be sued in their own courts without their consent, and have never permitted themselves to be sued in any court for torts committed in their name by tlieir officers. Nor can the settled distinction in this respect between contract and tort be evaded by framing the claim as upon an implied contract. (Gibbons v. United States, 8 Wall., 269, 274; Langford v. United States, 101 U. S., 341, 346; United, States v. Jones, above cited.)
“An action in the nature of an assumpsit for the use and occupation of real estate will never lie where there has been no relation of contract between the parties, and where the possession has been acquired and maintained under a different or adverse title, or where it is tortious and makes the defendant a trespasser. (Lloyd v. Hough, 1 How., 153, 159 ; Carpenter v. United States, 17 Wall., 489, 493.)
* * *****
“ It has since been held that if the United States appropriate to a public use land which they admit to be private property, they may be held as upon an implied contract, to pay its value to its owner. (United States v. Great Falls Manuf. Company, 112 U. S., 645, and 124 U. S., 581.)”
*264 Tbe Supreme Court of tbe State of Florida (Moody v. J. T. and K. R. R. Co., 20 Fla., 597), in tbe deeision of a question arising in tbe proceedings to condemn land for tbe use of a railway, said:
“Under tbe power of eminent domain tbe sovereign may make a compulsory purchase of tbe property of tbe citizen when sucb property is to be appropriated for public purpose or use, but sucb compulsory purchase or taking, as it is called, can not be made by tbe sovereign without just compensation.”
Following tbe same line of authority may be cited tbe cases of United States v. Russell (13 Wall., 629); Russell (5 C. Cls. R., 121); Kettel (21 id., 175); Butler (23 id., 335); Berdan Firearms Manufacturing Co. (26 id., 48); McKeever (14 id., 396); Mills (19 id., 79); Grey (21 id., 341); Great Falls Case (112 U. S., 646) ; Great Falls Manufacturing Co. (16 C. Cls, R., 160).
Regarding tbe case of Hill v. The United States (supra) as tbe most authoritative exposition of the law in connection with other decisions in tbe same direction, the court decides that, where tbe United States occupy land by tbe overflow of water as in this case in a public improvement, without any claim of title or right to tbe same, it is in law the exercise of tbe right of eminent domain, from which an implied contract arises to pay tbe reasonable value of tbe land. The demurrer is overruled, with leave to defendants to answer, if they so desire, by tbe 1st day of June, 1894.