"Weldon, J.,
delivered the opinion of the court:
On the 5th day of August, 1892, the claimant was the owner in fee of lot 39, in the city of Washington, on Meridian Hill, at or near the intersection of Sixteenth street extended and Morris street in said city.
In the Act of August 5,1892 (27 Stat. L., 367), making appropriation for sundry civil expenses of the Government, there is the following provision:
“That the circle at the intersection of Sixteenth street and New Hampshire avenue, known as Hancock Circle, be, and the same is, transferred to and located at or near the intersection of Sixteenth street extended and Morris street; the location and dimensions of the said circle to be as shown on a map on file in the office of the Commissioners of the District of Columbia.”
In the Act of March 2,1895 (28 Stat. L., 750), it is provided that the authorities in charge of preparing plans for the extension of streets are authorized to omit the circle hitherto required to be located at or near Morris street.
The act by which Hancock Circle was originally provided for is found in 25 Stat. L., 798, and reads as follows:
“ Condemnation of streets, roads, and alleys: For condemnation of streets, roads, and alleys, five thousand dollars. And the Commissioners of the District of Columbia are authorized and directed to condemn a sufficient amount of ground at the intersection of Sixteenth and U streets and New Hampshire avenue, from squares one hundred and seventy-five, one hundred and seventy-six, north, one hundred and seventy-seven, one hundred and eighty-nine, and one hundred and ninety, for the purpose of constructing a circular reservation, the same to be called Hancock Circle: Provided, That the said ground be acquired, or the cost of the same be defrayed, otherwise than at public expense.”
The findings show that from and after the passage of the act of August 5,1892, nothing was done on the part of the Commissioners to institute proceedings of any kind to transfer or locate a circle at the intersection of the continuation of Sixteenth street and Morris street; no surveys were made after *307 said date, and the close of the claimant was not broken by the entry of the Commissioners or their agents in the prosecution of the plan or purpose of the act of August 5,1892.
In the proposed transfer of Hancock Circle from the original location to the crossing of Sixteenth and Morris streets the claimant acquiesced, as is shown by his letter of January 30, 1895, to the Attorney-General, in which he waives payment as a condition precedent, and offers to make a deed to the “expropriator” for the land within the circle, as indicated on the map on file in the office of the Commissioners. In the communication to the Attorney-General the claimant avows his purpose of bringing suit in the Court of Claims, which he has done by the present proceeding, thereby acquiescing in the alleged taking of his property by the act of Congress.
The claimant avers in his amended petition, in substance, that the defendants, in the exercise of the right of eminent domain and by force and means of the statute, took for the use of the public 3,584 square feet of said lot, thereby impliedly agreeing to pay claimant a just compensation, to wit, the sum of $5,000.
This, then, becomes a proceeding on the part of the claimant to recover the value of property alleged to have been taken by the defendants for the public use, and for which no compensation has been made.
The defendants deny the taking in law and fact, and the question presented for determination is: Did the passage of the act of August 5,1892, operate in law as an appropriation of land, so as to give the right of compensation to the claimant in the form of a judgment in this case?
The last clause of the fifth amendment to the Constitution provides, “nor shall private property be taken for public use without just.compensation.” That is the constitutional recognition of the right of eminent domain; and while the right is fully recognized, it is limited and qualified by the provision that it shall not be fully exercised “ without just compensation ” to the owner.
That provision of the Constitution did not originate the right in the Federal Government, but simply recognized it as a prerogative incident to sovereignty, to be exercised upon the part of the Government upon the condition that compensation should be made to the owner. It is one of the remarkable facts of our *308 constitutional history that many of' the more important safeguards of person and property are embodied in the amendments to the Constitution, and do not form any part of the original instrument. As is said in the case of Merrimam, v. The United States (29 C. Cls. R., 257)—
“ The right of eminent domain is not inherent in the Government because of any provision of constitutional recognition, but.is an essential element in the essence of sovereignty, and the only recognition of it in the American Constitution is the limitation on its exercise as provided by the fifth amendment.”
The right of the plaintiff to recover depends upon the verity of allegation of the petition that “the defendants, in the exercise of the right of eminent domain, by force and means of the statute, took for the use of the public” property of the claimant.
If that allegation is sustained by the facts the right of the claimant to recover the value of the property so taken is clear and unquestionable. The Supreme Court and this court in many cases have adjudged a right of recovery whenever private property has been taken for public use in the exercise of the right and power of eminent domain. (The United States v. Great Falls, 112 U. S., 645; Same, 16 C. Cls. R., 160; Shillinger’s Case, 24 C. Cls. R., 278; Merriman’s Case, 29 C. Cls. R., 250; Gibson’s Case, 29 C. Cls. R., 18; Berdan’s Case, 26 C. Cls. R., 48.)
From these and other cases which plight be cited the doctrine is firmly established that where the United States take private property, conceding it to be such at the time of appropriation, an action will lie in this court to recover the value of the property so taken.
In one of the latest cases involving the question of the jurisdiction of the Circuit Court under the Act of March 3, 1887 (24 Stat. L., 505), it was held by a divided court that where property is taken by the United States without an acknowledgment of the claimant’s right of property the case sounds in tort. (Hill v. United States, U. S., 149, 593.)
In this case there is no claim made upon the part of the defendants that the land in question belonged to the United States; and the law, whatever other effect it had, clearly indicated a purpose to take private property for public use.
The issue, therefore, resolves itself into the inquiry, Has there been a taking of private property by the defendants within the meaning of the Constitution and law? If so, the *309 plaintiff is entitled to recover, and if not, tbe petition should be dismissed.
Tbe usual and ordinary form of taking is by an actual appropriation of tbe property, by taking physical possession of it and ousting tbe owner from tbe enjoyment and use of it; but there may be a taking in law where tbe possession of tbe res is unaffected and no invasion is made upon tbe physical enjoyment of tbe owner. . “ Property may bo taken in point of law without being actually reduced to useful possession.” (Randolph Em. Dom., 171.)
As is shown by tbe findings, nothing was done by the-defendants iff the consummation of tbe purpose of tbe act of 1892, and, so far as tbe enjoyment of tbe estate is concerned, tbe claimant was unmolested by any act of tbe defendants. Tbe defendants never entered upon tbe close in fact, and in 1895 abandoned tbe project of locating tbe circle by tbe passage of tbe law of 1895.
Tbe taking, to be binding on tbe United States, must be by some authoritative agent for tbe benefit of tbe United States, and may be accomplished by different modes, among which is a taking by tbe legislature, which is tbe most authoritative and responsible agent of tbe Government. As was said by tbe Supreme Court in tbe case of Boom Co. v. Patterson (98 U. S., 406)—
“The right of eminent domain — that is, tbe right to take private property for public uses — appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovereignty. Tbe clause found in tbe constitutions of tbe several States providing for just compensation for property taken is a mere limitation upon tbe exercise of tbe right. When tbe use is public, tbe necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of tbe legislature, or the power of appropriating it may be delegated, to private corporations, to be exercised by them in tbe execution of works in which the public is interested.”
In tbe same direction may be cited tbe following cases: Spears v. New York (87 N. Y., 359); Smaley v. Irwin (51 Pa. State Repts., 445); B. & O. R. R. Co. v. The P., W. & Ky. R. R. Co. (17 West Va., 812).
“It requires no judicial condemnation to subject private property to public uses. Like tbe power of tax, it resides in *310 tbe legislative department to whom the delegation is made. It may be exercised directly or indirectly by that body.” (Cooley’s Con. Lim., 528.)
Establishing, as these authorities do, the power of the legislature to appropriate lands so as to constitute a taking by the passage of a law, does the act under which it is alleged an appropriation was made in this case operate as a taking within the meaning of the law, so as to compel the defendants to pay the reasonable value of the property?
The legislation from which this litigation springs is peculiar. A circle was first established at the intersection of Sixteenth street and New Hampshire avenue, which, by the act of August 5,1892, is transferred to and located at a point including a portion of the land of the plaintiff. Under the original act providing for the Hancock Circle the Commissioners of the District of Columbia are authorized and directed to condemn a sufficient amount of ground for the circle; but to that power there is annexed the proviso “that the said ground be acquired or the cost of the same be defrayed otherwise than at public expense.” Nothing is said in the statute of 1892 as to the payment for the land embraced within the circle transferred, and the only change made by the act of the provisions of the original law of March 2,1889, is a change in the location of the circle.
The law originally providing for the location of Hancock Circle followed the usual course and form of such legislation, by empowering the Commissioners to proceed to condemn a sufficient amount of ground to establish a circle at the intersection of Sixteenth street and New Hampshire avenue, and the further provision as to the mode and manner of payment.
While the Congress of the United States and the legislatures of the different States may, in the exercise of the sovereign power of eminent domain, take and appropriate directly and without the intervention of judicial proceedings of condemnation, the usual mode in cases where no emergency exists is to authorize proceedings to condemn, and thereby ascertain the compensation to be paid to the owner and determine from that proceeding whether it is expedient to take the property for the public use at the assessment of its value.
The taking of the property directly by the act of the legislature without any ascertainment of its value being the exception to the general policy of such legislation, it should distinctly appear by the terms of the law and the circumstances *311 under wbicb tbe alleged appropriation is made that tbe purpose of tbe law was to appropriate aud take by force of tbe statute, and not tbe initiation of judicial proceedings to ascertain value and thereby determine tbe ultimate question of tbe expediency of tbe appropriation.
That there was no emergency in this case calculated to precipitate tbe action of Congress to take directly by tbe statute without reference to judicial proceedings is established by tbe history of tbe legislation applicable to tbe subject-matter of this controversy. While Congress exercises exclusive power of legislation within the District of Columbia, tbe Commissioners are the immediate agents of tbe District in the control of all its municipal interests affecting its improvement.
Tbe act authorizing tbe establishment of tbe circle was passed on tbe 2d of March, 1889; and it is not shown that tbe Commissioners did anything by way of condemning tbe land either before or after tbe act of August, 1892, changing tbe location from Sixteenth street and New Hampshire avenue to Morris street. There is no express repeal of tbe law of 1889, and tbe only change is as to tbe location of tbe circle, a change not at all incompatible with tbe other provisions of tbe act.
It is insisted by tbe claimant that tbe act of 1892 repealed tbe act of 1889, and that bis claim is relieved from the effect of that act both upon tbe question of condemnation by appropriate proceedings and compensation. If the act of 1889 is repealed in its provisions as to condemnation and compensation, it must be by way of implication, wbicb is not a favorite mode in judicial contemplation.
Tbe only provision of tbe act of 1892 inconsistent with tbe act of 1889 is tbe location of tbe circle, and tbe two acts can be enforced in perfect harmony to accomplish tbe purpose of establishing a circle, notwithstanding a change in tbe location. By tbe provisions of tbe act of 1889 tbe circle was to be established by tbe proceedings of tbe Commissioners and without any expense to tbe defendants. It was, therefore, a conditional grant of power under tbe first statute. It is true there is some force in tbe argument that if Congress intended to amend tbe first law it would have been so provided, but Congress often enact incompatible statutes wbicb operate as amendments and modifications of tbe original law, and tbe original law is to be enforced so long as it is not repealed, either by express provision or necessary implication.
*312 It is said in substance in Golds Case (3 C. Cls. R., 64) that a statute is not repealed by a subsequent act unless the latter uses apt and appropriate words for that purpose or unless there is such a direct conflict and absolute repugnancy between the two that both can not stand together.
Repeals by implication are not favored in law. (Dwarris on Statutes, 532.) “An act oí Parliament may be repealed by the express words of a subsequent statute or by necessary, irresistible implication.” (Sedgwick on Constitutional Law, 125.) In the case of Wood v. The United States (16 Pet., 362) it is said:
“The question then arises whether the 66th section of the act of 1799, ch. 128, has been repealed or whether it remains in full force. That it has not been expressly or by direct terms repealed is admitted, and the question resolves itself into the narrow inquiry whether it has been repealed by necessary implication. W e say by necessary implication, for it is not sufficient to establish that subsequent laws cover some or even all of the cases provided for by it, for they may be merely affirmative or cumulative or auxiliary, but there must be a positive repugnancy between the provisions of the new law and those of the old, and even then the old law is repealed only pro tanto to the extent of the repugnancy.”
In the case of Daviess et al. v. Fairbairn et al. (3 Howard, 636) the same doctrine in substance is announced.
The statutes of 1889 and 1892, although radically repugnant as to the exact location of the circle, are not necessarily contradictory of each other in other particulars. They relate to the location of a circle to be named in memory of a distinguished soldier, on the same street and not very distant from each other, so that they may be said to be in pari materia, coming within the language of the Supreme Court of Connecticut in the case of The United Society v. The President and Directors of the Eagle Bank of New Haven. (7 Conn. Rep., 456.) “ Statutes are pari materia which relate to the same person or thing, or to the same class of persons or things.” Although the statutes are not a part of a general system such as usually characterize statutes on a general subject, they do relate to substantially the same subject-matter, with the difference of location.
As is said by Chancellor Kent:
“Several acts in pari materia, and relating to the same subjects, are to be taken together, and compared, in the construction of them, because they are considered as having one object *313 in view, and as acting upon one system. This rule was declared in the cases of Rex v. Loxdale and The Earl of Ailesbury v. Pattison; and the rule applies though some of the statutes may have expired or are not referred to in the other acts. The object of the rule is to ascertain and carry into effect the intention; and it is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and ivas intended to be consistent and harmonious in its several parts and provisions.” (Kent’s Commentaries, 12th ed., vol. 1, 404.)
Counsel for claimant on the trial of the case called the attention of the court to the Congressional Kecord, tending to prove, as the counsel claimed, that the legislative intent was to repeal the act of 1889.
While it'is proper for a court, in the construction of a statute, to consider the. historical circumstances under which it was passed and the action of a committee in making a report, it is not proper to go beyond that in the consideration and examination of the debates incident to its passage.
On this point it is said by the Supreme Court:
“In expounding this law the judgment of the court can nor, in any degree, be influenced by the construction placed upon it by individual Members of Congress in the debate which took place on its passage, nor by the motives or reasons assigned by them for supporting or opposing the amendments that were offered. The law, as it passes, is the will of a majority of both Houses, and the only mode in which that will is spoken is the act itself; and we must gather their intention from the language they used, comparing it when any ambiguity exists with the laws upon the same subject, and looking, if necessary, to the public history of the times in which it was passed.” (Al-dridge et al. v. Williams, 3 Howard, p. 9.)
In the case of United. States v. Union Pacific Railroad (91 U. S., 72) it is held, in substance, that a court may recur to the history of the times in order to ascertain the reason for the law as well as the meaning of particular provisions; but the views of individual Members in debate, or the motives which induced them to vote for or against the passage of a statute, can not be considered.
While the incorporeal rights of an owner are equally protected with his corporeal, there must be such a taking as that he is deprived of, or circumscribed in some way, in the use and enjoyment of his estate, in order to. make the defendants liable. If his possession is undisturbed and his property in its value and use is undiminished, it can not be said that there is a *314 taking within the meaning of the Constitution and law. In the case at bar it is not shown that either result followed from the acts of the defendants.
Aside from the continued operation of the act of 1889, as indicated by the theory of this decision, the court holds that the contention of the defendants that there was no taking of the claimant’s property as alleged in the petition and required by the law is correct, and therefore the petition is dismissed.
Howry, J., took no part in the decision, the case having been argued before he took his seat.